UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A. NISAR AKBAR, et al.,

        Plaintiffs,

                                    Case No. 15-cv-12688

v.

                                    HON. MARK A. GOLDSMITH

SHAUKAT BANGASH, et al.,

        Defendants.

_____/

## OPINION AND ORDER
## DENYING DEFENDANTS SHAUKAT BANGASH AND GLOBAL HEALTH SERVICES LIMITED'S MOTION TO DISMISS (Dkt. 36)

This matter is before the Court on Defendants Shaukat Bangash and Global Health Services Limited's motion to dismiss (Dkt. 36). The issues have been fully briefed, and a hearing was held on March 23, 2016. For the reasons explained below, the Court denies the motion.

## I. BACKGROUND[1]

Defendant Dr. Shaukat Bangash, a dual citizen of the United States and Pakistan, is the Chief Executive Officer of Defendant Global Health Services Limited ("GHS"), as well as its director of investments and investor relations. Am. Compl. ¶¶ 30, 37 (Dkt. 10). GHS is a limited company headquartered in Pakistan. Id. ¶ 34. Bangash also resides in Pakistan. Id. ¶¶ 30, 38.

---

[1] The background facts are taken from the allegations in the amended complaint, which the Court accepts as true for purposes of this motion to dismiss only. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 384 n. 28, 386 (6th Cir. 1968). As the outcome of this motion principally turns on whether this action is appropriately brought in Michigan, the background facts concern the only Michigan Plaintiff, Amin Khan.

According to Plaintiffs, Bangash, along with other Defendants in this case, "directed numerous promotional communications, including telephone calls, written correspondence and others to Plaintiff [Amin] Khan," id. ¶ 83, the purpose of which was to solicit Khan's investment in the building of hospital facilities for Defendant Quaid-e-Azam International Hospital ("QIH") in Islamabad, Pakistan, see id. ¶¶ 40, 85-87.  More specifically, on June 14, 2007, Bangash called Khan's home and left a message for Khan to call Bangash back.  Id. ¶ 84.  Three days later, on June 17, 2007, Bangash visited Khan's home in Troy, Michigan, to solicit Khan's investment.  Id. ¶ 85.  After conducting meetings in Troy, Khan entered into an investment agreement with Defendants and "sent a check to [Bangash] to invest in shares in GHS."  Id. ¶¶ 86, 89.

Khan now claims that he, along with other Plaintiffs, received shares in GHS, but those shares were "worthless."  Id. ¶ 90.  This action followed.  See Compl. (Dkt. 1).  After Plaintiffs filed an amended complaint (Dkt. 10), Bangash and GHS (collectively, for purposes of this opinion, "Defendants") filed a motion to dismiss (Dkt. 36).

## II.  ANALYSIS

Defendants raise three arguments in their motion: (i) the Court lacks personal jurisdiction over them; (ii) the action should be dismissed on forum non conveniens grounds; and (iii) Plaintiff Shakeel Ahmed's claims should be dismissed under the first-to-file rule.  The Court considers each argument in turn.

### A.  Personal Jurisdiction

When presented with a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a district court has three procedural options: (i) decide the motion on the basis of written submissions and affidavits alone; (ii) permit discovery in aid of

the motion; or (iii) conduct an evidentiary hearing on the merits of the motion.  Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989); see also August v. Manley Toys, Ltd., 68 F. Supp. 3d 722, 725 (E.D. Mich. 2014) (citing Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991)).  The lack of statutory direction on how to proceed leaves the option for determining personal jurisdiction up to the district court's discretion.  Serras, 875 F.2d at 1214 (quoting Gibbs v. Buck, 307 U.S. 66, 71-72 (1939)).  Regardless of which course of action is chosen, "[t]he party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists."  Schneider v. Hardesty, 669 F.3d 693, 697 (6th Cir. 2012).

When the district court chooses the first option and rules on the basis of affidavits alone, the plaintiff's "relatively slight" burden consists of a prima facie showing that personal jurisdiction exists.  Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 360 (6th Cir. 2008); Schneider, 669 F.3d at 697.  Importantly, "the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction."  Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012). The plaintiff may make a prima facie showing of jurisdiction by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction."  Lexon Ins. Co. v. Devinshire Land Dev., LLC, 573 F. App'x 427, 429 (6th Cir. 2014).  The district court views the pleadings and affidavits in the light most favorable to the plaintiff, Miller, 694 F.3d at 678, and does "not weigh the controverting assertions of the party seeking dismissal," Estate of Thomson, 545 F.3d at 360; Serras, 875 F.2d at 1214 ("If [the plaintiff] meets [the prima facie] burden the motion to dismiss should be denied, notwithstanding any controverting presentation by the moving party.").  This prevents a defendant "from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional

3

2:15-cv-12688-MAG-MJH   Doc # 58   Filed 07/29/16   Pg 4 of 26   Pg ID 662

facts." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). Dismissal is only appropriate "if all the specific facts which the plaintiff [ ] alleges collectively fail to state a prima facie case for jurisdiction." Id.

A defendant may seek to invoke the court's discretion to hold an evidentiary hearing to determine personal jurisdiction. An evidentiary hearing may be conducted "if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution." Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988); Serras, 875 F.2d at 1214 ("If the written submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing."). If an evidentiary hearing is held, the burden rises and the plaintiff would be required to establish personal jurisdiction by a preponderance of the evidence. Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003); Schneider, 669 F.3d at 697 (explaining that "this rule prevents a defendant from defeating personal jurisdiction merely by filing a written affidavit contracting jurisdictional facts alleged by the plaintiff while simultaneously allowing a defendant to invoke the court's discretion to order a pretrial evidentiary hearing and thereafter apply the more-exacting standard when a plaintiff's jurisdictional allegations are wholly unfounded"). A court should be mindful that, "where the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, . . . [j]udicial resources may be more efficiently deployed if the court holds but one hearing on the contested facts." Serras, 875 F.2d at 1215. Thus, "a district court may find sound reasons to rule, on the basis of written submissions, that the plaintiff has made her prima facie showing that the court has personal jurisdiction over a defendant, and to reserve all factual determinations on the issue for trial." Id.

A denial of a 12(b)(2) motion does not mean the defendant proceeds to trial having waived the defense. Stated differently, a "threshold determination that personal jurisdiction exists does not relieve the plaintiff at the trial of the case-in-chief from proving the facts upon which jurisdiction is based by a preponderance of the evidence." Id. at 1214; see id. at 1215 ("[T]he party asserting jurisdiction must carry throughout the litigation the burden of showing that he is properly in court.").

Defendants' motion does not attempt to invoke the Court's discretion in holding an evidentiary hearing. And the disputed jurisdictional facts — namely, whether Bangash visited Khan in Michigan to solicit Khan's investment in QIH — is intimately intertwined with the parties' dispute on the merits. Therefore, the Court chooses the first course of action and decides Defendants' motion on the basis of written submissions and affidavits alone.

"When a federal court has federal question jurisdiction, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." Cmty. Trust Bancorp. v. Cmty. Trust Fin. Corp., 692 F.3d 469, 471 (6th Cir. 2012).[2] Plaintiffs contend that there is limited personal jurisdiction over Defendants under Michigan's

---

[2] It has been noted that, "where the state long-arm statue extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." Children's Legal Servs., PLLC v. Shor Levin & Derita, PC, 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012) (quoting Bridgeport Music, Inc. v. Still N The Water Publ'g, 327 F.3d 472, 477 (6th Cir. 2003)); see also Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992) ("Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one."). Although the Michigan's long-arm statute may be coterminous with the Due Process Clause, "the language of the long-arm statute enumerates specific instances where jurisdiction may be exercised," Beydoun v. Wataniya Restaurants Holding, Q.S.C., No. 12-cv-10461, 2013 WL 7965823, at *4 n.5 (E.D. Mich. Sept. 25, 2013), and the Court will conduct the familiar two-part analysis to ensure that personal jurisdiction in this case satisfies both the Michigan long-arm statute and the due process requirements, see Theunissen, 935 F.2d at 1462-1463.

long-arm statute, and that the exercise of specific personal jurisdiction would not deny Defendants of due process. For the reasons discussed below, the Court agrees and finds that Plaintiffs have established a prima facie showing of personal jurisdiction.

### 1. Michigan's Long-Arm Statute

Michigan's long-arm statute was the Michigan Legislature's attempt "to expand its full potential limited personal jurisdiction of Michigan courts over non residents," Sifers v. Horen, 188 N.W.2d 623 (Mich. 1971) (emphasis in original), and the Sixth Circuit "historically has understood Michigan to intend its long-arm statute to extend to the boundaries of the [F]ourteenth [A]mendment," Theunissen, 935 F.2d at 1462. Put another way, Michigan's long-arm statute has been construed "to bestow the broadest possible grant of personal jurisdiction consistent with due process." Audi AG & Volkswagen of Am., Inc. v. D'Amato, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004); see also Green v. Wilson, 565 N.W.2d 813, 816-817 (Mich. 1997) (Michigan's "long-arm statute is coextensive with due process insofar as the statute is limited by due process, and, therefore, the statute and due process share the same outer boundary").

The long-arm statute extends both general and limited jurisdiction over nonresident individuals and corporations. See Mich. Comp. Laws § 600.701 (general, individuals); Mich. Comp. Laws § 600.705 (limited, individuals); Mich. Comp. Laws § 600.711 (general, corporations); Mich. Comp. Laws § 600.715 (limited, corporations). While general jurisdiction enables a court in Michigan to exercise jurisdiction "regardless of whether the claim at issue is related to [the defendant's] activities in the state or has an in-state effect," Neogen Corp. v. Neo

Gen Screening, Inc., 282 F.3d 883, 888 (6th Cir. 2002),[3] the long-arm statute extends limited personal jurisdiction over a nonresident in claims "arising out of an act which creates . . . the following relationship[ ]": "[t]he transaction of any business within the state," Mich. Comp. Laws 600.705(1); Mich. Comp. Laws § 600.715(1).  This part of the statute is satisfied if the "defendant conducted even the slightest act of business in Michigan." Citizens Bank v. Parnes, 376 F. App'x 496, 501 (6th Cir. 2010).

Plaintiffs claim that Bangash called Khan "in June 2007" and "asked to visit [Khan's] home in Michigan in order to discuss the investment project."  Pls. Resp. at 22 (Dkt. 41); Khan Aff. ¶ 3 (Dkt. 41-1) (received a call from Bangash "[s]ometime in June 2007," during which Bangash "requested to come to Michigan to discuss an investment project").  According to Plaintiffs, "[o]n or around, June 23, 2007, [Bangash], individually and through GHS, visited . . . Khan's home in Troy, Michigan to further persuade . . . Khan to invest in GHS."  Pls. Resp. at 22; Khan Aff. ¶ 4 (Bangash visited Khan's home in Troy, Michigan "[o]n June 23, 2007," and "presented the investment opportunity in [GHS] for shares and construction of [QIH]").  Plaintiffs contend that Bangash successfully convinced "Khan to enter into a contract and issue a check for the development of QIH in his meeting on June 23, 2007 in Michigan."  Pls. Resp. at 22; Khan Aff. ¶ 5 (claiming that, while Bangash was in Khan's home, Khan "signed the investment contract and presented [Bangash] an installment payment of $15,833.00"); see also Khan Aff. ¶ 7 (contending that he "did not invest in [GHS/QIH] until [Bangash's] visit to my home in Michigan on June 17, 2007" (emphasis omitted)).  Therefore, Plaintiffs argue that there is limited personal jurisdiction under the first part of Michigan's long-arm statute.  Pls. Resp. at 22-23.

---

[3] Plaintiffs do not dispute that general jurisdiction does not apply in this case.  Pls. Resp. at 20 (Dkt. 41).

A review of the written submissions and Khan's affidavit establishes that Plaintiffs have presented a prima facie case that Bangash, individually and on behalf of GHS, transacted business in Michigan. Although Khan's affidavit has some inconsistencies when it comes to the actual date that Bangash came to visit Khan's home in Michigan (e.g., June 17 or June 23), it does state with reasonable particularity that the purpose of the visit was to solicit Khan's investment in QIH, which, in fact, occurred during the visit. This transaction of business satisfies Michigan's long-arm statute. Mich. Comp. Laws § 600.705(1); Mich. Comp. Laws § 600.715(1).[4]

### 2. Due Process

Defendants argue that exercising personal jurisdiction would violate their constitutional rights to due process. See generally Defs. Mot. at 20-24.

The Due Process Clause requires that the defendant have sufficient "minimum contacts" with the forum state, such that a finding personal jurisdiction does not "offend traditional notions of fair play and substantial justice." Conn v. Zakharov, 667 F.3d 705, 712 (6th Cir. 2012). "There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." Id. at 712-713. Plaintiffs do not dispute that general jurisdiction does not apply in this case. See Pls. Resp. at 25 (applying only specific jurisdiction test). Therefore, the Court will assess whether specific personal jurisdiction exists.

---

[4] Plaintiffs also argue that personal jurisdiction exists over Defendants under Mich. Comp. Laws § 600.705(2) and Mich. Comp. Laws § 600.715(2), as well as under an "alter ego" theory. Pls. Resp. at 23-25. Because personal jurisdiction under Michigan's long-arm statute is satisfied under Mich. Comp. Laws § 600.705(1) and Mich. Comp. Laws § 600.715(1), there is no need to address these additional arguments.

Specific jurisdiction comprises the following three elements:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Conn, 667 F.3d at 713 (quoting Bird v. Parsons, 289 F.3d 865, 874 (6th Cir. 2002) (quoting S. Mach. Co., 401 F.2d at 381)).

### i. Purposeful Availment

Under this prong of the analysis, Plaintiffs must establish that Defendants purposefully availed themselves of the privilege of acting in Michigan or causing a consequence in Michigan. According to the Sixth Circuit,

> [p]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct which can be properly regarded as a prime generating cause of the effects resulting in the forum state, something more than a passive availment of the forum state's opportunities. The purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.

Bridgeport Music, 327 F.3d at 478 (emphasis in original). Id. "The emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." Id.

As alleged and supported by Khan's affidavit, Bangash, individually and on behalf of GHS, called Khan, a Michigan resident, to solicit an investment in QIH. Bangash then visited Khan in Troy, Michigan, where Bangash again solicited an investment from Khan. Khan and

Bangash then entered into an investment agreement, which also took place in Michigan. Based on the preceding overt actions, Plaintiffs have established a substantial connection between Defendants' conduct and Michigan such that Defendants should reasonably anticipate being haled into court there.

### ii. Arising From

For specific personal jurisdiction to lie, "the cause of action must arise from the defendant's activities there." Conn, 667 F.3d at 713. To satisfy the "arising from" prong, "the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." Beydoun v. Wataniya Rests. Holding, Q.S.C., 768 F.3d 499, 506-507 (6th Cir. 2014). "Put another way, the 'arising from' requirement . . . is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state. Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." Id. at 507.

Again, as alleged and supported by Khan's affidavit, Bangash solicited Khan's investment in QIH in Michigan and entered into an investment agreement with Khan during that visit. Had Bangash and Khan not entered into the investment agreement in Michigan, Khan would have no cause of action against Defendants based on the fraudulent sale of securities that occurred during the visit.

### iii. Reasonableness

When the first two criteria are met, there is an inference of reasonableness, and only the "unusual case" will not meet the last criterion. Schneider, 669 F.3d at 703. The defendant "must present a compelling case that the presence of some other considerations would render

jurisdiction unreasonable." Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 554 (6th Cir. 2007). "In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; [and] (3) the plaintiff's interest in obtaining relief[.]" Schneider, 669 F.3d at 703-704; see also City of Monroe Emps. Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 666 (6th Cir. 2005) ("Whether the exercise of jurisdiction over a foreign defendant is reasonable is a function of balancing three factors: 'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.'" (quoting Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113 (1987))).

In their motion, Defendants argue that exercising jurisdiction would be unreasonable for the following reasons: (i) the burden on Defendants is large because both are located in Islamabad, Pakistan; (ii) Michigan has no interest in pursuing Defendants for fraud because of their limited contacts in Michigan; and (iii) Plaintiffs' interest in obtaining relief is "very low" because they could file suit in Pakistan. Defs. Mot. at 23-24. In response, Plaintiffs argue that it is reasonable to exercise jurisdiction because (i) Bangash traveled to Michigan to solicit an investment from a Michigan resident, and (ii) Michigan has an interest in preventing fraud within its borders. Pls. Resp. at 28.

The Court finds that this is not a compelling case such that the exercise of jurisdiction would be unreasonable. The first factor does weigh in favor of Defendants, as they arguably bear a greater burden litigating this case in Michigan due to their location in Pakistan. See, e.g., Int'l Techs. Consultants, Inc. v. Euroglas S.A., 107 F.3d 386, 393 (6th Cir. 1997) (asserting that there is "no reason to doubt that Michigan would be 'a distant or inconvenient forum'" for a Switzerland-based defendant for due process purposes); Gates Learjet Corp. v. Jensen, 743 F.2d

11

1325, 1333 (9th Cir. 1984) ("Litigating abroad imposes significant inconveniences upon the party appearing in a foreign country."); <u>Faurecia Exhaust Sys., Inc. v. Walker</u>, 464 F. Supp. 2d 700, 707-708 (N.D. Ohio 2006) (noting that the burden on a Switerland resident litigating claims in the United States "is obvious and substantial").   However, Michigan has an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents.   <u>See Schneider</u>, 669 F.3d at 704; <u>Bird</u>, 289 F.3d at 875 (state has a legitimate interest in protecting the business interests of its citizens, even though the plaintiff's claim involves federal law); <u>Rohn v. Commercial Recovery Sys., Inc.</u>, No. 13-cv-10780, 2013 WL 6195578, at *5 (E.D. Mich. Nov. 26, 2013).   And Khan has an obvious interest in obtaining relief in Michigan, where he is located and where both the alleged fraud and harm took place.

For these reasons, the Court concludes that Plaintiffs have established a prima facie case that Defendants are subject to personal jurisdiction in Michigan.

## B.  Forum Non Conveniens

Defendants also argue that this case should be dismissed on the basis of forum non conveniens.   "Under the common law doctrine of forum non conveniens, a district court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue."   <u>Hefferan v. Ethicon Endo-Surgery Inc.</u>, ___ F.3d ___, 2016 WL 3648368, at *1 (6th Cir. July 8, 2016).[5] Under the tripartite framework for forum non conveniens analysis, the Court must first determine what degree of deference is owed to Plaintiffs' choice of forum.   <u>Id.</u>.  Defendants then bear the burden of establishing an adequate alternative forum.   <u>Id.</u>  Finally, Defendants must show that Plaintiffs' "chosen forum is unnecessarily burdensome based on public and private factors."   <u>Id.</u>

---

[5] This doctrine only applies if the alternate forum is another country.   <u>Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.</u>, 629 F.3d 520, 523 n.1 (6th Cir. 2010) ("If another federal district is an alternative forum, dismissal on grounds of forum non conveniens is inapplicable and [28 U.S.C.] § 1404(a) applies.").

### 1.  Degree of Deference

As a matter of convenience, a domestic plaintiff will typically initiate a suit in his or her home forum.  Id. at *2.  The degree of deference accorded a plaintiff's choice of forum corresponds to the level of convenience for the plaintiff.  Id.  Although it will inevitably turn on the circumstances of the case, the greater the convenience to a domestic plaintiff, the greater the deference to the home-forum choice, as well as the greater the difficulty facing a defendant seeking dismissal for forum non conveniens.  See id. ("[T]he greater the plaintiff's connection to the United States 'and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens.'" (quoting Iragorri v. United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001) (en banc))).  Dismissal in these circumstances will be appropriate "only when the defendant establishes such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent."  Id.; see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981) (stating that the "plaintiff's choice of forum should rarely be disturbed").

Neither party expressly addresses the degree of deference that should be owed to these particular Plaintiffs' choice of forum.  Nevertheless, the Court finds that Plaintiffs' choice of forum — the United States — is entitled to greater deference, as Plaintiffs are all American citizens and/or residents, see Am. Compl. ¶¶ 19-29; Pls. Resp. at 28-29, 37, and no facts have been presented to account for a lesser presumption of convenience, see Hefferan, 2016 WL 3648368, at *3 (American plaintiffs, who were domiciled in Germany for twelve years at the time they brought their action in the United States, were entitled to a lesser presumption of convenience).

## 2.  Adequate Alternative Forum

"An alternative forum is adequate when the defendant is amenable to process in another jurisdiction that may remedy the alleged harm."  Id. (citing Piper Aircraft, 454 U.S. at 254-255). An alternative forum is not rendered inadequate merely because the law is "less favorable to the plaintiff."  Id.  However, if the alternative forum's available remedy is "clearly inadequate or unsatisfactory . . . dismissal would thwart the interest of justice."  Id.  An example of this would be a jurisdiction that "does not permit litigation of the subject matter of the dispute."  Id.; see also Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan, 273 F.3d 241, 246 (2d Cir. 2001) ("It follows that an adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum.").

Defendants contend that Pakistan is an adequate alternative forum and "the laws of Pakistan provide an adequate remedy for Plaintiffs' dispute."  Defs. Mot. at 26.  Although Defendants do not affirmatively state that they would submit to Pakistani jurisdiction for the claims asserted in the amended complaint, Plaintiffs have provided no argument to suggest that Defendants would not be amenable to process.  Plaintiffs have also failed to provide any argument that a remedy available in Pakistan would be clearly inadequate or unsatisfactory. Therefore, the Court assumes for the sake of argument that Defendants have established that Pakistan is an adequate alternative forum.

## 3.  The Public and Private Interests

The last step of the analysis requires Defendants to show that Plaintiffs' "choice of forum is unnecessarily burdensome[.]"  Hefferan, 2016 WL 3648368, at *6.  This inquiry requires a careful balancing of all the factors that touch upon the public and private interests set forth in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), as applied to "each analytically distinct set of

claims." Hefferan, 2016 WL 3648368, at *6 (quoting Duha v. Agrium, Inc., 448 F.3d 867, 879 (6th Cir. 2006)).

### i.  Private-Interest Factors

The private-interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.  There may also be questions as to the enforcibility [sic] of a judgment if one is obtained." Gulf Oil, 330 U.S. at 508.  The Court considers each of these factors in turn.

### a.  Ease of Access to Sources of Proof

"The charge to examine the relative ease of access to sources of proof requires courts to dig into the substance of the dispute to assess the relevant evidence."  Hefferan, 2016 WL 3648368, at *6.  "Access to non-witness sources of proof, including documents in particular, is properly considered as part of the ease-of-access factor." Duha, 448 F.3d at 876.

Defendants argue that most of the "relevant evidence" is located in Pakistan.  Defs. Mot. at 28.  In particular, Defendants state that the hospital, the securities filings, many of the solicitations for investments, and Bangash himself are all located in Pakistan.  Id.  However, Defendants do not explain how any of these pieces of evidence are relevant to any particular claim.

In response, Plaintiffs claim that the vast majority of the "sources of proof and evidence pertaining to the sale of fake securities are currently in the hands of Plaintiffs in the United States," including all email correspondence. Pls. Resp. at 31.  Plaintiffs also appear to argue that sources of proof outside the United States may be obtained with relative ease because this Court

is authorized "to issue a subpoena requiring the appearance as a witness before it, a national of the United States who is in a foreign country or requiring the production of a specified document." Id. (citing 28 U.S.C. § 1783). Like Defendants, Plaintiffs do not state which piece of evidence is relevant to any particular claim asserted in the amended complaint.

Based on the parties' briefing, this Court would be merely postulating as to what evidence could potentially be introduced to prove the elements of all of Plaintiffs' claims. This places an inappropriate burden on the Court beyond merely digging "into the substance of the dispute." As such, the Court is unable to discern whether this factor weighs in favor of dismissal or not. Because of their failure to properly address this factor , Defendants have failed to meet their burden of showing that litigation in the United States would be unnecessarily burdensome.

**b. Availability of Compulsory Process**

The availability-of-compulsory-process factor "is properly considered when witnesses are unwilling to appear," but it "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." Hefferan, 2016 WL 3648368, at *7.

Defendants argue that "[t]he limited availability of witnesses favors dismissal of the action." Defs. Mot. at 28. According to Defendants, Bangash is "the most important witness" and is located in Pakistan. Id. at 29. Defendants further claim, in a cursory and unsubstantiated manner, that "[a]ll witnesses to any allegedly fraudulent conduct would necessarily be in Pakistan." Id. However, Defendants do not claim that Bangash, or any other Pakistani witness, would not subject to compulsory process in United States courts, or that any witness is unwilling to testify. And the amended complaint clearly states that Plaintiffs are all residents of the United States, Am. Compl. ¶¶ 19-29, which undermines Defendants' contention that "[a]ll witnesses . . .

16

would necessarily be in Pakistan," Defs. Mot. at 29.  Therefore, this factor does not weigh in favor of dismissal.

### c.  Cost of Obtaining Attendance of Witnesses

"The cost of travel and of obtaining testimony of witnesses is an appropriate consideration in initially determining whether the forum selected by the plaintiff oppresses the defendant."  Zions, 629 F.3d at 526.  Defendants do not address this factor, but Plaintiffs state that the cost of obtaining the attendance of witnesses will be high regardless of whether the case proceeds in Michigan or Pakistan.  Pls. Resp. at 32.  Either all of the American witnesses would either have to travel to Pakistan to testify, or all of the Pakistani witnesses would have to travel to Michigan to testify.  Id.  Plaintiffs further note that Defendants Shaukat Bangash, Shahid Bangash, and Shafqat Bangash are all U.S. citizens, and Shafqat currently lives in Michigan.  Id.  The Court agrees with Plaintiffs' assessment of the relative costs associated with obtaining witnesses and finds that this factor does not necessarily weigh in favor of dismissal.

### d.  View of the Premises, If Appropriate

Defendants argue that physically viewing the premises of QIH "is an important issue" because "[s]uch inspection may prove crucial to whether there is any merit to Plaintiffs' allegations that investment funds were misappropriated and not properly spent on the operation, maintenance, and improvement of the Hospital."  Defs. Mot. at 29.

In response, Plaintiffs contend that viewing QIH is "immaterial" because it will not assist the factfinder in determining the truth of the allegations in the amended complaint.  Pls. Resp. at 33.  Rather, Plaintiffs argue that the "issue in this case is whether Defendants solicited American citizens . . . into investing millions of dollars in fake securities in GHS to build QIH."  Id.  The Court agrees with Plaintiffs.

17

Physical inspection of QIH is not appropriate in this case because the premises themselves will not aid the factfinder in determining whether the funds from the investments can be traced to the building, operation, maintenance, or improvement of QIH.  Rather, Defendants would still be required to provide proof that the funds can be traced from Plaintiffs' investments and to QIH.  Moreover, the allegations in the complaint turn on the validity of the securities themselves, which Plaintiffs contend were "fake" when Defendants issued them.  Proof of their validity does not, in any way, turn on viewing QIH's premises.  Therefore, this factor does not weigh in favor of dismissal.

### e.  Other Practical Problems

"The list of private-interest factors includes a catch-all for 'practical problems that make trial of a case easy, expeditious and inexpensive.'"  Hefferan, 2016 WL 3648368, at *8 (quoting Gulf Oil, 330 U.S. at 508).  A difference in language between the factfinders and the parties is a "recognized factor supporting dismissal on the basis of forum non conveniens."  Barak v. Zeff, 289 F. App'x 907, 913 (6th Cir. 2008).  Furthermore, "[c]ases involving foreign language documents normally consider their impact and perhaps the cost of translation in the balance of convenience."  Duha, 448 F.3d at 876.

Defendants state that "[e]ach individual Plaintiff and Defendant is from Pakistan and speaks Urdu."  Defs. Mot. at 29.  According to Defendants, "[a]lmost every relevant conversation among Shaukat and investors was in Urdu."  Id. at 30.  Defendants then argue that trying this case in Michigan would be impracticable because it would require an interpreter to translate "each piece of evidence and every word of testimony."  Id.

Plaintiffs, on the other hand, claim that they, as well as all Defendants, "speak fluent English."  Pls. Resp. at 32.  Regarding Bangash in particular, Plaintiffs note that he "was a

18

practicing doctor in Michigan for five years" and can speak English.  Id.  Plaintiffs further state that "Urdu translators are very easy to obtain in Michigan."  Id.  Defendants do not refute any of these postulations in their reply brief.

Defendants claim that they speak Urdu.  At first blush, this may present a practical problem in trying this case in front of an English-speaking jury.  However, Defendants do not state that they cannot speak English.  Nor do Defendants claim that testimony during trial would necessarily take place in Urdu.  Furthermore, the Court has not been presented with anything to substantiate the contention that documentary evidence in this case is not in English.  Neither party has discussed the conceivable cost of translating documents from Urdu to English, nor has either party alluded to the volume of documents that would require translation.  Therefore, Defendants have failed to carry their burden of showing that these considerations weigh in favor of dismissal.

### f.   Enforceability of Judgment

Defendants argue dismissal is warranted because a judgment obtained in Pakistan would be enforceable in Michigan.  Defs. Mot. at 30 (citing Mich. Comp. Laws § 691.1131).  Plaintiffs contend that "whether a judgment can be enforced in Pakistan is not a factor," because federal courts can enforce judgments between U.S. citizens "regardless of whether they are currently outside the country."  Pls. Resp. at 33.  Defendants do not refute this assertion.  Nor do Defendants address whether a Michigan judgment would be enforceable in Pakistan.  Therefore, Defendants have failed to establish that this factor counsels in favor of dismissing this action.

### ii.  Public-Interest Factors

The public-interest factors include "administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in

having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Piper Aircraft, 454 U.S. at 241 n.6 (quoting Gulf Oil, 330 U.S. at 509).   Evaluating these factors requires a district court to "consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum." Hefferan, 2016 WL 3648368, at *8 (quoting Van Cauwenberghe, 486 U.S. at 528).   The Court considers each of these factors in turn.

### a.  Administrative Difficulties

Plaintiffs contend that requiring all fraudulent investment cases involving American-Pakistani businessmen to be heard in Pakistan would increase the "congestion in an already congested court system in Pakistan." Pls. Resp. at 34.  Defendants do not address this factor.

Although the potential for congestion and delay in Pakistani courts would bear on this Court's analysis for forum non conveniens, absent anything to substantiate Plaintiffs' assertion concerning the perceived congestion of Pakistani courts, this Court cannot determine what, if any, administrative difficulties would flow from this litigation proceeding in Pakistan. See Ramakrishna v. Besser Co., 172 F. Supp. 2d 926, 931 (E.D. Mich. 2001) ("The plaintiffs' argument regarding delays in the Indian court system, however, is not without merit.   The defendant's own expert admits that a case in the Madras High Court would last four to ten years, although he emphasizes that parties can file petitions to expedite the process.").   Therefore, this factor does not necessarily weigh in favor of either party.

### b.  Local Interest in Local Controversy

"The primary local-interest considerations are the parties' connections to the local forum and the location of the injury."  Hefferan, 2016 WL 3648368, at *8.

Defendants do not squarely address whether Michigan has in interest in this case.  Rather, they argue that Pakistan has a "significant interest" in the litigation that outweighs that of Michigan's interest because "QIH and GHS are both owned and operated in Islamabad, Pakistan."  Defs. Mot. at 31.  Defendants further contend that, because much of the money transferred to build QIH was in Pakistani currency, the case should be heard in Pakistan.  Id.

Plaintiffs, on the other hand, argue that Michigan has an interest in this matter because Defendants allegedly "defrauded millions of dollars from . . . United States citizens," which includes Khan, a resident of Michigan.  Pls. Resp. at 35.  The Court agrees with Plaintiffs.

Although Pakistan may have an interest in litigation that involves a business located within its borders, that interest does not outweigh the interest of Plaintiffs' connections to the local forum or the location of their injuries — both of which are in the United States.  This case involves a group of mostly American citizens who allegedly sold fake securities to American citizens and/or residents.  The United States, and Michigan in particular, would have an interest in ensuring and protecting against such alleged harm.  Therefore, this factor does not weigh in favor of dismissal.

### c.  Conflict of Laws or Application of Foreign Law

Defendants contend that Pakistani law applies "to all claims in the lawsuit."  Defs. Mot. at 32 (emphasis added).[6]  Defendants first argue that Pakistani law applies to Plaintiffs' breach-of-contract claim.   Michigan's choice-of-law rules govern what law applies to this claim,

---

[6] Defendants' assertion that Pakistani law applies to all of Plaintiffs' claims is clearly incorrect, as Plaintiffs' claims under both the Securities Act of 1933, 15 U.S.C. § 77, et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq., would require applying federal law.

Ramakrishna, 172 F. Supp. 2d at 932 ("Federal courts apply the choice-of-law rules of the state in which they sit."), and the Restatement (Second) of Conflict of Laws serves as the guidepost for Michigan choice-of-law decision making.  See Uhl v. Komatsu Forklift Co., Ltd., 512 F.3d 294, 302 (6th Cir. 2008).  The Restatement's factor analysis takes into account (i) the place of contracting; (ii) the place of negotiation; (iii) the place of performance; (iv) the location of the subject matter of the contract; and (v) the domicile, residence, nationality, place of incorporation, and place of business of the parties.  Id. (citing Restatement (Second) of Conflict of Laws § 188(2) (1971)).  The Court must "balance the expectations of the parties to a contract with the interests of the states involved to determine which state's law to apply."  Id.

According to Defendants, the contracts were made in Pakistan and the contracts were to be performed in Pakistan, where QIH was built.  Defs. Mot. at 32. In response, Plaintiffs claim that Michigan law applies, at least to Khan's agreement, because it was made in Michigan and "the last act necessary to create a binding agreement occurred in Michigan when [Khan] gave [Bangash] money in exchange for ownership in GHS stock."  Pls. Resp. at 36.  Plaintiffs further argue that the place of performance of the contract was Michigan because Khan was to pay money in exchange for owning stock certificates in GHS, while Defendants' performance was the transfer of those certificates to Khan.  Id.

Although neither party addressed the specific Restatement factors, a careful balancing of those factors weighs in favor of applying Michigan law for the breach-of-contract claim. Bangash and Khan negotiated and contracted for the sale of securities in Troy, Michigan. Khan's performance occurred in Michigan when he gave Bangash his money, while Bangash's performance involved the transfer of stock certificates to Khan, which presumably originated in Pakistan and were mailed to Khan.  The subject matter of Khan and Bangash's agreement was

the transfer of ownership shares in QIH, which itself is located in Pakistan.  Khan is a resident of Troy, Michigan, and a United States citizen, Am. Compl. ¶ 19; Pls. Resp. at 31, while Bangash is a resident of Islamabad, Pakistan, and a dual citizen of both the United States and Pakistan, Am. Compl. ¶ 30.  GHS's place of business is Pakistan.  See id. ¶ 30.  Although it is a close call, this Court concludes that more factors have a significant Michigan dimension — including the place of contracting, the place of performance, and Khan's residence — such that Michigan law would apply to Khan's breach-of-contract claim.

Defendants also argue that Pakistani law would also apply to Plaintiffs' tort claims.  Defs. Mot. at 32.  Michigan's choice-of-law rules governing tort claims presume "that the law of the forum applies unless there is a rational reason to displace it with the law of another location." Ramakrishna, 172 F. Supp. 2d at 932.  Thus, the presumption is that Michigan law would apply to Plaintiffs' tort claims.  However, Michigan courts often consider the following factors found in the Restatement to determine if the law of another forum should apply: (i) the place where the injury occurred; (ii) the place where the conduct causing the injury occurred; (iii) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (iv) the place where the relationship, if any, between the parties is centered.  Id. (citing Restatement (Second) of Conflict of Laws § 145); Duha v. Agrium, Inc., 340 F. Supp. 2d 787, 800 (E.D. Mich. 2004), vacated, 448 F.3d 867 (6th Cir. 2006).

According to Defendants, the injuries Plaintiffs sustained "occurred overseas," the conduct at issue occurred in Pakistan because that is where Bangash "met in person with most Plaintiffs and built QIH," Plaintiffs are domiciled and reside in both Pakistan and the United States, almost all of the parties are Pakistani nationals, and the relationship between the parties is

centered in Pakistan because the lawsuit involves "money invested in Rupees to build a hospital in Islamabad, Pakistan." Defs. Mot. at 33.

Plaintiffs counter in their response, claiming that Khan's investment took place in his home in Michigan, the conduct that caused Khan's injury also took place in the home when Bangash allegedly committed fraud in the sale of fake securities, Plaintiffs "are domiciled and reside only in the United States," almost all parties maintain United States citizenship, and the relationship between the parties centered in the United States where they met each other. Pls. Resp. at 37-38. As such, Plaintiffs argue that the interests favor applying Michigan law to the tort claims. The Court agrees.

Khan's injury — the loss of his investment money — occurred in Michigan, regardless of how that money was ultimately used by Defendants in Pakistan. The conduct that caused the injury was Bangash's alleged misrepresentations, which were made during his meetings with Khan in Michigan. Given the varied domiciles, residences, and citizenships of the parties, this factor is not dispositive. And although Khan's investment was to be used to build QIH in Pakistan, the relationship between Khan and Bangash centered on their meetings and discussions of the investment agreement, all of which took place in Michigan. Therefore, Defendants have failed to overcome the presumption that Michigan law applies to Plaintiffs' tort claims.

### d.  Burden of Jury Duty

Plaintiffs state that they are all American citizens or residents and "[a]ny potential juror could be subject to the same fraudulent Ponzi scheme conducted by the Defendants." Pls. Resp. at 34. Because a U.S. citizen should not be subjected to the laws of another country for doing business with other U.S. citizens in the United States, Plaintiffs argue that "a Michigan juror would in fact have a close connection with the outcome of the case." Id. at 34-35. Defendants

do not address this factor.  The Court agrees with Plaintiffs and finds that this factor does not weigh in favor of dismissal.

In light of the great deference afforded Plaintiffs' choice of forum, as well as a reasonable balance of the public and private interests, the Court concludes that allowing this suit to proceed in the United States would not be oppressive or vexatious to Defendants, such that litigation here is out of all proportion to Plaintiffs' convenience.

### C.  The First-to-File Rule

To manage overlapping litigation and encourage comity among federal district courts, the discretionary first-to-file rule provides that, "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." Baatz v. Columbia Transmission, LLC, 814 F.3d 785, 789 (6th Cir. 2016); see id. (this prudential doctrine "conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results").  There is no dispute that Plaintiff Shakeel Ahmed filed suit against Defendants first in the U.S. District Court for the Eastern District of Missouri on February 12, 2013, see Ahmed v. Bangash, et al., 13-cv-269, Dkt. 1 (Complaint), and the Michigan complaint was filed over two years later on July 31, 2015 (Dkt. 1).  Defendants argue that the first-to-file rule prevents Ahmed from pursuing the Michigan action.  See Defs. Mot. at 33-34.

At first blush, it would appear as though there is some overlap among these two cases that could result in the possibility of conflicting decisions between the two federal courts, were both cases to proceed simultaneously.  However, the concern of piecemeal or duplicative litigation is absent in this particular case.  This is because the district court for the Eastern District of Missouri has already dismissed all of the defendants in that action without reaching

25

the merits of Ahmed's claims.  See Ahmed v. Bangash, et al., 13-cv-269, 5/31/2013 Docket Text

Order, Dkt. 37 (granting plaintiff's motion to dismiss defendant Bangash Investments, Inc.); id.,

2/28/2014 Op. & Order, Dkt. 63 (dismissing Shahid Bangash for lack of personal jurisdiction);

id., 4/7/2014 Order, Dkt. 71 (dismissing GHS and QIH for plaintiff's failure to serve process);

id., 2/9/2016 Op. & Order, Dkt. 91 (dismissing Shaukat Bangash for lack of personal

jurisdiction).   As the Missouri case is currently closed, and with no indication of an appeal

appearing on that docket that could breathe life back into those claims, the possibility of

conflicting results arising from the two cases is seemingly nonexistent.

Because the first-filed action has been terminated, the first-to-file rule does not bar the

present action.

## III.  CONCLUSION

For the reasons discussed above, the Court denies Defendants Shaukat Bangash and

Global Health Services Limited's motion to dismiss (Dkt. 36).  These Defendants shall answer

the amended complaint on or before August 12, 2016.

SO ORDERED.


Dated:  July 29, 2016                               s/Mark A. Goldsmith
        Detroit, Michigan                          MARK A. GOLDSMITH
                                                   United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and
any unrepresented parties via the Court's ECF System to their respective email or First Class
U.S. mail addresses disclosed on the Notice of Electronic Filing on July 29, 2016.

                                                   s/Karri Sandusky
                                                   Case Manager

26