UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A. NISAR AKBAR, et al.,

       Plaintiffs,

                                       Case No. 15-cv-12688

v.

                                       HON. MARK A. GOLDSMITH

SHAUKAT BANGASH, et al.,

       Defendants.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANT SHAFQAT BANGASH'S MOTION TO DISMISS (Dkt. 11) AND GRANTING IN PART AND DENYING IN PART DEFENDANTS SHAHID BANGASH AND MEHBOOB CHAUDHRY'S MOTION TO DISMISS (Dkt. 23)

This matter is before the Court on Defendant Shafqat Bangash's motion to dismiss (Dkt. 11), as well as Defendants Shahid Bangash and Mehboob Chaudhry's motion to dismiss (Dkt. 23).[1] The issues were fully briefed, and a hearing was held on March 23, 2016.[2] For the reasons discussed below, the Court grants in part and denies in part Shafqat's motion, and grants in part and denies in part Shahid and Chaudhry's motion.

### I. BACKGROUND[3]

---

[1] Defendants Shaukat Bangash, Shahid Bangash, and Shafqat Bangash are brothers. See Am. Compl. ¶¶ 32, 46 (Dkt. 10). To avoid confusion, the Court will refer to these Defendants by their first names.

[2] The Court also heard oral argument on Defendants Shaukat and Global Health Services Limited's ("GHS") motion to dismiss (Dkt. 36) on the same day. After the Court issued an opinion and order denying that motion to dismiss, Akbar v. Bangash, No. 15-cv-12688, 2016 WL 4060930, at *13 (E.D. Mich. July 29, 2016), the parties appeared to have reached a settlement, and an order dismissing the case with prejudice was issued on September 7, 2016, subject to reopening within 30 days if the settlement was not consummated. 9/7/2016 Order (Dkt. 66). Plaintiffs filed a motion to reopen the case on October 13, 2016, see Pls. Mot. to Reopen (Dkt. 69), which the Court granted, see 11/15/2016 Order (Dkt. 74).

[3] The background facts are taken from the allegations in the amended complaint, which the Court accepts as true for purposes of this motion to dismiss only. Pinker v. Roche Holdings Ltd., 292

1

Eleven Plaintiffs brought suit on July 31, 2015, claiming that they were offered and sold fake securities in the form of investment contracts and shares in Defendant Quaid-e-Azam International Hospital ("QIH"), which is located in Islamabad, Pakistan, through GHS, a limited company headquartered in Pakistan. Am. Compl. ¶¶ 1, 70.

Shahid, a dual citizen of the United States and Pakistan, holds himself out as an investment advisor specializing in certain overseas investments in Pakistan. Id. ¶¶ 31, 41. Shahid is the second-highest ranking board member of GHS and "acted as the collector of funds in the United States, including the Eastern District of Michigan[,] and transferred the money back to Pakistan." Id. ¶¶ 34, 43-44. Shafqat, who is domiciled in Battle Creek, Michigan, serves on the board of directors of GHS and, based on filings with the Securities and Exchange Commission of Pakistan, is GHS's Chief Accountant. Id. ¶¶ 32, 46. Chaudhry, a resident of Pennsylvania, is the Vice Chairman on QIH's board of directors, as well as the "official spokesman and right-hand-man" of Shaukat, the Chief Executive Officer of GHS, and one of the principal actors in the alleged scheme. Id. ¶¶ 36, 58-59. Chaudhry solicited several investors and appeared "on live television broadcasted in the U.S. and Pakistan," where he "gave investors a 500% guarantee in return on investments." Id. ¶ 61.

According to Plaintiffs, Shahid, Shafqat, Shaukat, and GHS "directed numerous promotional communications, including telephone calls, written correspondence and others to Plaintiff [Amin] Khan," id. ¶ 83, the purpose of which was to solicit Khan's investment in the building of QIH, see id. ¶¶ 40, 85-87. More specifically, on June 14, 2007, Shaukat called Khan's home and left a message for Khan to call Shaukat back. Id. ¶ 84. Three days later, on

---

F.3d 361, 368 (3d Cir. 2002); S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 384 n.28, 386 (6th Cir. 1968). As the outcome of Shahid and Chaudhry's motion principally turns on whether the Court may exercise personal jurisdiction over them in Michigan, the background facts primarily concern the only Michigan Plaintiff, Amin Khan.

June 17, 2007, Shaukat visited Khan's home in Troy, Michigan, to solicit Khan's investment. Id. ¶ 85. After conducting meetings in Michigan, during which "Defendants represented to Plaintiff Khan that his investment in GHS would be used to build hospital facilities for QIH and finance operations," Khan "sent a check to Defendant Shaukat to invest in shares in GHS." Id. ¶¶ 86-87, 89.

Khan now claims that he, along with other Plaintiffs, received shares in GHS, but those shares were "worthless." Id. ¶ 90. In an attempt to cover up Shaukat's fraudulent scheme in the unregistered offer and sale of securities, Shafqat sent an email on April 28, 2013 to over 70 investors to convince them that their money was safe and the securities were real. Id. ¶¶ 1, 52-53, 83. According to Plaintiffs, this email prevented many investors from mitigating their damages. Id. ¶ 53.

## II. STANDARD OF DECISION

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010). To survive a motion to dismiss, a complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim. Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).

## III. ANALYSIS

Defendants raise three main arguments in their motions: (i) Plaintiffs' federal claims are barred by the applicable statutes of limitations; (ii) the action should be dismissed on forum non conveniens grounds; and (iii) the Court lacks personal jurisdiction over Shahid and Chaudhry. The Court considers each argument in turn.

### A. Statute of Limitations

Plaintiffs allege in count one of their amended complaint that Defendants violated §§ 5(a) and 5(c) of the Securities Act, see 15 U.S.C. §§ 77e(a), (c), because they did not file or have in effect a valid registration statement in connection with the offer and sale of shares in GHS. See Am. Compl. ¶¶ 221-223. Plaintiffs further allege in count two that Defendants violated § 10(b) of the Securities Exchange Act ("Exchange Act"), see 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, see 17 C.F.R. § 240.10b-5, because Defendants made material misrepresentations and omissions concerning the sale of securities with the intent to defraud. See Am. Compl. ¶¶ 225-232. In count three, Plaintiffs allege that, because Defendants violated § 10(b) and Rule 10b-5, Defendants are also liable under § 20(a) of the Exchange Act. See Am. Compl. ¶¶ 233-235.

Shafqat argues that Plaintiffs' claims in count one are time-barred under the one-year statute of limitations under the Securities Act, see 15 U.S.C. § 77m, and their claims in counts two and three are barred under the two-year statute of limitations under the Exchange Act, see 28 U.S.C. § 1658(b)(1). Def. Shafqat Mot. to Dismiss at 20-22. The Court agrees with Shafqat regarding his first argument but disagrees with his second argument.

### 1. Statute of Limitations for Violations of § 5 of the Securities Act

Section 13 of the Securities Act provides that an action under § 12(a)(1) of the Act must be brought "within one year after the violation upon which it is based." 15 U.S.C. § 77m. A violation of § 12(a)(1) occurs, in turn, when a person "offers or sells a security in violation of [§ 5 of the Securities Act]." 15 U.S.C. § 77*l*(a)(1). Sections 5(a) and 5(c) of the Securities Act "together require that securities be registered before they can be sold or offered for sale." SEC v. Sierra Brokerage Servs., Inc., 712 F.3d 321, 328 (6th Cir. 2013) (citing 15 U.S.C. §§ 77e(a), (c)). The registration requirement of § 5 exists "to protect investors by requiring they receive

sufficient information to make informed investment decisions." Id. (citing SEC v. Ralston Purina Co., 346 U.S. 119, 124 (1953)). A violation of § 5 occurs when: (i) there was no registration statement in effect for the securities, (ii) a person directly or indirectly sold or offered to sell the securities, and (iii) means of interstate transportation or communication were used in connection with the offer or sale. SEC v. Bravata, 3 F. Supp. 3d 638, 659 (E.D. Mich. 2014).[4]

The one-year period for violations brought under § 12(a)(1) focuses "on the last conduct constituting the alleged violation," Cummings v. Paramount Partners, LP, 715 F. Supp. 2d 880, 894 (D. Minn. 2010), rather than when the plaintiff actually discovered the non-registration violations, Nolfi v. Ohio Ky. Oil Corp., 675 F.3d 538, 553 (6th Cir. 2012) (collecting cases and holding that the discovery rule for § 12(a)(2) claims does not apply to § 12(a)(1) claims, and, therefore, the one-year statute of limitations "runs from the date of the violation irrespective of whether the plaintiff knew of the violation"); In re Biozoom, Inc. Sec. Litig., No. 1:14-CV-01087, 2015 WL 1954553, at *3 (N.D. Ohio Apr. 29, 2015) ("[T]he statute of limitations runs from the last unlawful action that directly relates to a particular transaction that violates the Securities Act.").

Shafqat first argues that the one-year period is "triggered by inquiry notice," which is "when 'storm warnings' were on the radar sufficient to alert the claimant that things were amiss." Def. Shafqat Mot. to Dismiss at 20. According to Shafqat, storm warnings were present after Plaintiff Nasir Akbar accused Shaukat of running a Ponzi scheme in an April 2013 email. Id. at 21. Shafqat also contends that the last investment activity alleged by any of the Plaintiffs is

---

[4] A showing of scienter is not required under § 5 of the Securities Act. Aaron v. SEC, 446 U.S. 680, 714 n.5 (1980) (Blackmun, Brennan, & Marshall, JJ., concurring in part and dissenting in part); see also SEC v. CMKM Diamonds, Inc., 729 F.3d 1248, 1256 (9th Cir. 2013) (collecting cases).

when Plaintiff Mubashir Shah received his purported shares in GHS on September 4, 2012. Def. Shafqat Mot. to Dismiss at 6, 21 (citing Am. Compl. ¶ 137).

In response, Plaintiffs argue that, under the discovery rule, the "earliest any Plaintiff began to suspect that their investment had been usurped by Defendants by way of fake securities was in August of 2014" after "most of the Plaintiffs in this case attended a convention for the Association of Pakistani Physicians of North America" held between August 13 and 17, 2014. Pls. Resp. to Def. Shafqat at 22 (Dkt. 19). Plaintiffs did not refute the assertion that the last investment activity occurred on September 4, 2012.

As noted above, Plaintiffs' amended complaint alleges violations of §§ 5(a) and 5(c) of the Securities Act. Thus, under §§ 12(a)(1) and 13, Plaintiffs had one year from the last unlawful action constituting an alleged non-registration violation to bring these claims — meaning that, at most, Plaintiffs had until September 4, 2013 to file their complaint. Plaintiffs' discovery-based argument is without merit in this case. See Nolfi, 675 F.3d at 553.

Because Plaintiffs did not initiate this action until July 31, 2015, well beyond the one-year limitations period, the Court concludes that Plaintiffs' claims under § 5 of the Securities Act are time-barred. The Court dismisses those claims with prejudice.

### 2. Statute of Limitations for Violations of § 10b of the Exchange Act and Rule 10b-5

For alleged violations of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, the applicable statute of limitations provides that a private right of action may be brought no later than the earlier of (i) "2 years after the discovery of the facts constituting the violation," or (ii) "5 years after such violation." 28 U.S.C. § 1658(b); Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 646-648 (2010).

Shafqat argues that Plaintiffs "began accusing Shaukat of running a Ponzi scheme in April 2013, and investors were suspicious at that time." Def. Shafqat Mot. to Dismiss at 22. It appears as though Shafqat is making the same inquiry-notice argument that he raised regarding Plaintiffs' claims under § 5 of the Securities Act. See id. at 21 ("[S]torm warnings were clearly on Plaintiffs' radar as of April 2013 when Plaintiff Nisar Akbar began alleging Defendant Shaukat ran a Ponzi scheme. . . . Such allegations indicate that Plaintiffs were on notice to exercise due diligence in confirming their suspicions and file a complaint.").

In Merck, the Supreme Court rejected the inquiry-notice standard. 559 U.S. at 653; see also id. (terms like "inquiry notice" and "storm warnings" could "be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating"); In re Bear Stearns Mortg. Pass-Through Certificates Litig., 851 F. Supp. 2d 746, 762 (S.D.N.Y. 2012) ("In Merck, the Supreme Court rejected the inquiry notice standard in the context of a claim brought under Section 10(b) of the Securities Act . . . ."); Carlucci v. Han, 886 F. Supp. 2d 497, 515 (E.D. Va. 2012) (In Merck, "the Supreme Court expressly rejected 'inquiry notice' as the relevant standard for Section 10(b) claims . . . ."). Rather, the Merck Court held that "the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' including scienter — irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." Merck, 559 U.S. at 653 (quoting 28 U.S.C. § 1658(b)); see also City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 175 (2d Cir. 2011) (elaborating on Merck that a fact is not deemed "discovered" for limitations purposes until "a reasonably diligent plaintiff would have sufficient information about the fact to adequately plead it in a complaint").

Aside from his cursory inquiry-notice argument, Shafqat puts forth no other argument that the limitations period had run on Plaintiffs' § 10(b) claims. Importantly, Shafqat fails to

7

raise any argument that, after the April 2013 email, a reasonably diligent plaintiff would have discovered facts constituting the violation, including scienter. Having made no other argument aside from alleged "storm warnings" under inquiry notice, Shafqat has failed to carry his burden to demonstrate that the limitations period has run. The Court denies this portion of Shafqat's motion to dismiss.

**B. Forum Non Conveniens**

Shafqat, Shahid, and Chaudhry contend that this case should be dismissed on the basis of forum non conveniens, raising the same arguments previously made by Shaukat and GHS. Compare Def. Shafqat Mot. to Dismiss at 10-19 and Defs. Shahid & Chaudhry Mot. to Dismiss at 26-34 with Defs. Shaukat & GHS Mot. to Dismiss at 24-33. For the same reasons the Court rejected Shaukat and GHS's arguments, see Akbar, 2016 WL 4060930, at *6-*12, the Court rejects these Defendants' arguments and denies those portions of their motions to dismiss.

**C. Personal Jurisdiction**

Shahid and Chaudhry contend that this case should be dismissed under Federal Rule of Civil Procedure 12(b)(2) because the Court lacks personal jurisdiction over them. See generally Defs. Shahid & Chaudhry Mot. to Dismiss at 16-26.

When presented with a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a district court has three procedural options: (i) decide the motion on the basis of written submissions and affidavits alone; (ii) permit discovery in aid of the motion; or (iii) conduct an evidentiary hearing on the merits of the motion. Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989); see also August v. Manley Toys, Ltd., 68 F. Supp. 3d 722, 725 (E.D. Mich. 2014) (citing Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir.

8

1991)).[5] The lack of statutory direction on how to proceed leaves the option for determining personal jurisdiction up to the district court's discretion. Serras, 875 F.2d at 1214 (quoting Gibbs v. Buck, 307 U.S. 66, 71-72 (1939)). Regardless of which course of action is chosen, "[t]he party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." Schneider v. Hardesty, 669 F.3d 693, 697 (6th Cir. 2012). The Court chooses the first course of action and decides Defendants' motion on the basis of written submissions and affidavits alone.[6]

When the district court chooses the first option, the plaintiff's "relatively slight" burden consists of a prima facie showing that personal jurisdiction exists. Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 360 (6th Cir. 2008); Schneider, 669 F.3d at 697. Importantly, "the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678 (6th Cir. 2012); Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) ("The plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto."). The plaintiff may make a prima facie showing of jurisdiction by "establishing with reasonable

---

[5] An evidentiary hearing may be conducted "if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution." Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988); Serras, 875 F.2d at 1214 ("If the written submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing."). If an evidentiary hearing is held, the burden rises and the plaintiff would be required to establish personal jurisdiction by a preponderance of the evidence. Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003); Schneider, 669 F.3d at 697 (explaining that "this rule prevents a defendant from defeating personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by the plaintiff while simultaneously allowing a defendant to invoke the court's discretion to order a pretrial evidentiary hearing and thereafter apply the more-exacting standard when a plaintiff's jurisdictional allegations are wholly unfounded"). Although a defendant may seek to invoke the court's discretion to hold an evidentiary hearing to determine personal jurisdiction, neither Shahid nor Chaudhry requested an evidentiary hearing in this case.
[6] Plaintiffs did not file any affidavits with their response brief.

particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." Lexon Ins. Co. v. Devinshire Land Dev., LLC, 573 F. App'x 427, 429 (6th Cir. 2014). The district court views the pleadings and affidavits in the light most favorable to the plaintiff, Miller, 694 F.3d at 678, and does "not weigh the controverting assertions of the party seeking dismissal," Estate of Thomson, 545 F.3d at 360; see also Serras, 875 F.2d at 1214 ("If [the plaintiff] meets [the prima facie] burden the motion to dismiss should be denied, notwithstanding any controverting presentation by the moving party."). This prevents a defendant "from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). Dismissal is only appropriate "if all the specific facts which the plaintiff [ ] alleges collectively fail to state a prima facie case for jurisdiction." Id.

When a federal court has federal-question jurisdiction, as is the case here, "personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." Cmty. Trust Bancorp. v. Cmty. Trust Fin. Corp., 692 F.3d 469, 471 (6th Cir. 2012). Plaintiffs contend that there is limited personal jurisdiction over Shahid and Chaudhry under Michigan's long-arm statute and that the exercise of specific personal jurisdiction would not deny either Defendant of due process.[7]

---

[7] Plaintiffs also argue that there is personal jurisdiction over Shadid and Chaudhry because they "acted as co-conspirators with all other Defendants." Pls. Resp. to Defs. Shahid & Chaudhry Mot. to Dismiss at 20. Plaintiffs further argue that personal jurisdiction exists because Defendants Shahid and Chaudhry acted as the "alter ego[s]" of the other Defendants. See id. at 21-23 (Dkt. 29). The Court disagrees with both assertions.

Plaintiffs do not allege the existence of a conspiracy in their amended complaint. Even if they did, personal jurisdiction would not lie on the basis of their asserted conspiracy theory. Singh v. Daimler, AG, 902 F. Supp. 2d 974, 981 (E.D. Mich. 2012) (declining "to find personal jurisdiction over [the Defendants] based on a conspiracy theory because the Sixth Circuit has not

One of the arguments Shahid and Chaudhry raise in their motion is that exercising personal jurisdiction would violate their constitutional rights to due process. See generally Defs. Shahid & Chaudhry Mot. to Dismiss at 22-23. The Court agrees.[8]

The Due Process Clause requires that a defendant have sufficient "minimum contacts" with the forum state, such that a finding of personal jurisdiction does not "offend traditional notions of fair play and substantial justice." Conn v. Zakharov, 667 F.3d 705, 712 (6th Cir. 2012). "There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." Id. at 712-713. Plaintiffs do not appear to dispute that general jurisdiction does not apply in this case. See Pls. Resp. to Defs. Shahid & Chaudhry Mot. to Dismiss at 18-22 (applying only specific-jurisdiction test). Therefore, the Court will assess whether specific personal jurisdiction exists.

Specific jurisdiction requires the following three elements:

---

adopted this theory of personal jurisdiction"); In re Auto. Parts Antitrust Litig., No. 12-cv-00500, 2014 WL 2999271, at *6 (E.D. Mich. July, 3, 2014) ("Simply put, the Sixth Circuit has not endorsed the theory that sufficient minimum contacts to exercise personal jurisdiction may be based upon the acts of a co-conspirator, performed in the furtherance of the conspiracy, over a nonresident that has no other contacts with the forum. At most, in 1981, the Sixth Circuit acknowledged the existence of the theory, but has yet to adopt it."). Although the Sixth Circuit has adopted the alter-ego theory of personal jurisdiction, which "provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction," Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 450-451 (6th Cir. 2012), Plaintiffs does not explain, or present authorities confirming, how a theory applicable to corporate or other business entities applies to individuals, such as Shahid or Chaudhry. This theory of personal jurisdiction is inapplicable to these individual Defendants.

[8] In concluding that Plaintiffs have failed to establish that the exercise of personal jurisdiction would not violate Defendants' due-process rights, the Court refrains from addressing Defendants' additional arguments in their motion to dismiss.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Conn, 667 F.3d at 713.

Under the purposeful-availment prong of the analysis, Plaintiffs must establish that Shahid and Chaudhry purposefully availed themselves of the privilege of acting in Michigan or causing a consequence in Michigan. According to the Sixth Circuit,

> [p]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct which can be properly regarded as a prime generating cause of the effects resulting in the forum state, something more than a passive availment of the forum state's opportunities. The purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant <u>himself</u> that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.

Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 478 (6th Cir. 2003) (emphasis in original). "The emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." Id. For the reasons discussed below, the Court concludes that Plaintiffs have failed to establish a prima facie case that either Shahid or Chaudhry purposefully availed themselves of the privilege of acting in, nor caused a consequence in, the State of Michigan.

### 1. Purposeful Availment by Shahid

On the one hand, Plaintiffs claim in their response brief, without citation to any of the amended complaint's factual allegations or affidavits in support, that Shahid "purposefully directed" his activities to residents of Michigan because, when Plaintiff Amin Khan, a Michigan

12

resident, "sent his investment money to GHS, it went straight to Defendant Shahid, as the collector of funds." Pls. Resp. to Defs. Shahid & Chaudhry Mot. to Dismiss at 22-23. On the other hand, Shahid states in his declaration that he has "never transacted any business within Michigan"; "never solicited business for QIH, GHS, or any other business, in Michigan"; "never spoke[n] directly with Amin Khan . . . on the phone, sent him an email, or sent him a letter"; "never sent promotional communication to Amin Khan"; and "never attended or conducted a meeting in Michigan." Shahid Decl. ¶ 5, 15-17 (Dkt. 23-1).

It is Plaintiffs' burden to demonstrate that personal jurisdiction exists. Schneider, 669 F.3d at 697. Although this burden may be "relatively slight," Toyota Motor Corp., 545 F.3d at 360, Plaintiffs must still show the "specific facts demonstrating that the court has jurisdiction," Miller, 694 F.3d at 678. Having opted not to file any affidavits of their own, and because of the lack of any citations to the amended complaint to support their factual assertions, Plaintiffs have utterly failed to make a prima facie showing of jurisdiction by "establishing with reasonable particularity sufficient contacts" between Shahid and Michigan. Lexon Ins. Co., 573 F. App'x at 429.

Although a "plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction," Miller, 694 F.3d at 678, Plaintiffs do allege in their amended complaint that Shahid "acted as the collector of funds in the United States, including the Eastern District of Michigan and transferred the money back to Pakistan," Am. Compl. ¶ 44. However, regarding Khan in particular, Plaintiffs then allege that he "sent a check to Defendant Shaukat to invest in shares in GHS," id. ¶ 89 (emphasis added), not Shahid. See also Khan Aff., Ex. A to Pls. Resp. to Defs. Shaukat & GHS Mot. to Dismiss (Dkt. 41-1) ("While Shaukat Bangash was in my home, I signed the investment contract and presented him an installment payment of $15,833.00.").

13

There are no allegations in the amended complaint that Shahid ever received funds from Khan, that Shahid received Khan's funds from Shaukat, or that Shahid ever "engaged in some overt actions connecting" him with Michigan. Bridgeport Music, 327 F.3d at 478. Therefore, the Court concludes that Shahid's purported contacts with Khan are insufficient to constitute purposeful availment. Accord Ahmed v. Bangash, No. 4:13CV269, 2014 WL 805869, at *5 (E.D. Mo. Feb. 28, 2014) (concluding, in similar case alleging similar causes of action against Shahid, that Shahid's contacts with the State of Missouri were insufficient to constitute purposeful availment).

Because exercising personal jurisdiction over Shahid would violate his constitutional right to due process, the Court grants this portion of Shahid and Chaudhry's motion to dismiss.

### 2. Purposeful Availment by Chaudhry

In their response brief, Plaintiffs contend, without citation to any of the amended complaint's factual allegations or affidavits in support, that Chaudhry purposefully directed his activities to residents of Michigan when he "used the television and Internet to solicit investments from individuals across the country, not only in Michigan." Pls. Resp. to Defs. Shahid & Chaudhry Mot. to Dismiss at 22; see also id. ("On live television in the United States, Defendant Chaudhry guaranteed investors would receive a 500% return on their investment in QIH.").

Chaudhry acknowledges in his declaration that he "took part in creating an infomercial promoting QIH" in or around 2008 or 2009. Chaudhry Decl. ¶ 18 (Dkt. 23-2). However, Chaudhry claims that this infomercial "aired on the television station [G]eo TV, and was

14

available on the [I]nternet via streaming." Id.[9] Chaudhry further claims that the "infomercial was not targeted at Michigan or its residents." Id.[10] Having decided not to file any affidavits with their response brief, Plaintiffs do not refute any of these assertions.

Again, without any affidavits or written submissions, and without any citations to the amended complaint to support their present factual assertions, Plaintiffs have failed to carry even the "relatively slight" burden of "establishing with reasonable particularity sufficient contacts" between Chaudhry and Michigan.

Even taking as true the one factual allegation in the amended complaint that aligns with the argument in their response brief — that Chaudhry appeared "on live television broadcasted in the U.S. and Pakistan," and "gave investors a 500% guarantee in return on investments," Am. Compl. ¶ 61 — the Court still finds that Plaintiffs have failed to establish that Chaudhry purposefully availed himself of the privilege of acting in Michigan or caused a consequence in Michigan. See Ahmed, 2014 WL 805869, at *5 ("Plaintiff, however, has failed to present evidence that the television commercials and seminars were directed specifically to Missouri citizens, and were not sent out to various other states."). Without anything to suggest that it was directed to residents in Michigan, a nationally broadcast television commercial is nothing more than the sort "passive availment" of Michigan's opportunities that is insufficient to exercise personal jurisdiction. See, e.g., Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op., 17 F.3d 1302, 1305 (10th Cir. 1994) ("[M]ere placement of advertisements in nationally distributed

---

[9] Geo TV appears to be a Pakistani television channel, see Corporate Profile for GEO Television, www.geo.tv/corporate-profile/ (last visited March 30, 2017), which allows viewers to stream live television via the Internet.

[10] Chaudhry also states that he "never solicited business for QIH, GHS, or any other business, in Michigan"; never "spoke directly with Amin Khan . . . on the phone, sent him an email, or sent him a letter"; "never attended or conducted a meeting in Michigan"; and "never sent promotional communication directly to Amin Khan." Chaudhry Decl. ¶¶ 15-17.

papers or journals does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser."); Wines v. Lake Havasu Boat Mfg., Inc., 846 F.2d 40, 43 (8th Cir. 1988) (holding that an Arizona boat maker who advertised in national publications was not subject to specific jurisdiction in Minnesota because the advertising was not aimed at Minnesota); Singletary v. B.R.X., Inc., 828 F.2d 1135, 1136 (5th Cir. 1987) ("[A]dvertising in national publications is not in itself sufficient to subject a defendant to personal jurisdiction."); Annie Oakley Enters., Inc. v. Sunset Tan Corp. & Consulting, LLC, 703 F. Supp. 2d 881, 893 (N.D. Ind. 2010) ("[T]he national broadcast of a television program does not give rise to personal jurisdiction in every state."); IDS Life Ins. v. SunAmerica, Inc., 958 F. Supp. 1258, 1268 (N.D. Ill. 1997) (holding that a website on the Internet, advertisements in nationally circulated newspapers and television, and a toll-free number were insufficient to establish personal jurisdiction).

Moreover, Chaudhry's declaration makes it clear that the infomercial was aired on television on Geo TV, and it was available for viewing in the United States by streaming via the Internet. This further compounds the lack of minimum contacts between Chaudhry and the State of Michigan. Remick v. Manfredy, 238 F.3d 248, 259 n.3 (3d Cir. 2001) ("[M]ere posting of information or advertisement on an Internet website does not confer nationwide personal jurisdiction . . . ."); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997) ("[N]o court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state."); Elayyan v. Sol Melia, SA, 571 F. Supp. 2d 886, 904 (N.D. Ind. 2008) (specific personal jurisdiction based on defendant's Internet advertisements is proper "if the individual used the website and if the alleged injury then arose out of that individual's use of the website" (emphasis in original)); Millennium Enters., Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 914 (D. Or. 1999) ("Unlike newspaper, mailing, radio, television

16

and other media containing advertisements and solicitations, most Internet advertisements and solicitations are not directed at a specific geographic areas or markets; to the contrary, advertising on the Internet targets no one in particular and everyone in particular in any given geographic location.").

Because exercising personal jurisdiction over Chaudhry would violate his constitutional right to due process, the Court grants this portion of Shahid and Chaudhry's motion to dismiss.

### IV. CONCLUSION

For the reasons stated above, the Court grants in part and denies in Defendant Shafqat Bangash's motion to dismiss (Dkt. 11). Plaintiffs' claims under § 5 of the Securities Act are time-barred and dismissed with prejudice. In all other respects, that motion is denied. The Court further grants in part and denies in part Defendants Shahid Bangash and Mehboob Chaudhry's motion to dismiss (Dkt. 23). Because the exercise of personal jurisdiction over these Defendants would violate due process, they are dismissed from this action.

SO ORDERED.

Dated: July 11, 2017         s/Mark A. Goldsmith
    Detroit, Michigan        MARK A. GOLDSMITH
                                  United States District Judge

### **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 11, 2017.

                                  s/Karri Sandusky
                                  Case Manager